UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER LINDSEY,

Plaintiff,

v. CASE NO.: 8:10-cv-1910-T-23AEP

EDWARD HOWELL,

Defendant.
___________________________________/

**ORDER**

Christopher Lindsey ("Lindsey") sues Edward Howell, ("Howell") an officer of the Sarasota Police Department, and alleges (1) a constitutional violation under the First Amendment and (2) malicious prosecution.[1] Lindsey, who lives on a 42-foot sailboat, alleges several encounters with Edward Howell, an officer in the Marine Patrol Unit of the City of Sarasota. Lindsey asserts that Howell harassed, searched, and arrested him because of his opposition to Sarasota's "Mooring Ordinance." The animosity between Lindsey and Howell, who was in favor of the Mooring Ordinance, climaxed in November, 2007, when Lindsey and Howell attended a Sarasota County Commission meeting, during which the "Mooring Ordinance" was discussed. Each party spoke on the issue and after the meeting either a bilateral or a unilateral altercation (Howell denies that he responded when Lindsey accosted him) occurred. The next day, Howell performed a

[1] Lindsey's original complaint (Doc. 1) included the City of Sarasota and asserted additional claims. However, the City of Sarasota and Lindsey's other claims were dismissed. (Doc. 17)

safety inspection on Lindsey's boat without Lindsey's permission.[2] The animosity continued, with Howell allegedly threatening to "tow and crush" Lindsey's sailboat and Lindsey threatening to arm himself against Howell. Lindsey was arrested for "Corruption by Threat Against Public Servant" but was acquitted by a jury.

The defendants moved for dismissal or summary judgment on each count of Lindsey's original complaint. (Doc. 6) In response, Lindsey acquiesced to dismissal of the claim against the City of Sarasota but opposed dismissal of each claim against Howell. (Doc. 11, Page 14) The defendants replied (Doc. 15) and asserted that qualified immunity bars each claim because Howell's conduct was "objectively reasonable" and violated no "clearly established law." An order (Doc. 17), dismissing Counts One, Two, and Five of the complaint and allowing Lindsey to file an amended complaint asserting Counts Three and Four, states:

> Lindsey shall file an amended complaint including only the allegations contained in Counts Three and Four of the original complaint. Lindsey shall state in detail the circumstances surrounding (1) his interactions with Howell during the first week of November, 2007, (2) his arrest, and (3) his prosecution. Any motion to dismiss shall address, among other things, the legality of announcing an intent to procure a weapon to defend against perceived illegal action by law enforcement.

Lindsey files an amended complaint (Doc. 26) and Howell again moves (Doc. 27) to dismiss.

The amended complaint asserts claims for "Retaliation for Free Speech in Violation of the First Amendment to the United States Constitution" and for "Malicious

---

[2] The legality of the safety inspection was addressed in an earlier order. (Doc. 17)

Prosecution." (Doc. 26) Lindsey's claims alleging an unreasonable boarding and search were dismissed (Doc. 17) and Lindsey's remaining claims involve his arrest and prosecution for "Corruption by Threat Against a Public Servant." (Doc. 26, Page 10) The plaintiff's complaint contains the following assertions:

> 37. LINDSEY immediately called the Coast Guard to report HOWELL'S harassing behavior. LINDSEY informed Officer William Morrow that he would arm himself in self-defense if HOWELL did not leave the Stray Turtle alone.
>
> 38. Officer Morrow advised that using a weapon would be a bad idea. LINDSEY agreed and said that he intended to deal with this situation through all proper legal channels.
>
> 39. Promptly thereafter, Officer Morrow contacted HOWELL's supervisor at the CITY, Sergeant Jim DeNiro, and advised that LINDSEY had complained about HOWELL and had mentioned a gun. Sergeant Jim DeNiro told Officer Morrow that the CITY was familiar with LINDSEY, as they had dealt with him repeatedly in the past.
>
> . . .
>
> 59. On or about November 18, 2007, LINDSEY also contacted the Sarasota County Sherriff's office and asked to speak to a marine patrol supervisor. He told the operator that police were threatening to tow and crush his boat and that he was going to arm himself to ensure that this did not happen.
>
> . . .
>
> 81. On April 18, 2008, counsel for LINDSEY moved to dismiss the one count information, quoting the recorded conversations that comprised the prosecution, as follows: On November 18, 2007, following the boarding of his vessel by Officer Howell, to the Sarasota County Sheriff's Department: Do you have a marine unit I can speak with? This is getting out of hand. This is a serious issue. The City Police are saying under a county ordinance they will tow and crush my boat. I haven't received one ticket. My boat is legal. I am going to arm myself and go back down there and make sure

> they don't do it. I need to talk to a county officer. My name is Chris Lindsey and my number is (number omitted). I can't stress to you how serious this is.
>
> 82. The Motion to Dismiss included the quoted language of the November 18, 2007 statement to Deputy Deiter: "I have a right to defend my vessel…I will use a gun to defend my vessel if anyone comes aboard."

Lindsey's allegations show that he threatened to use a gun to defend himself against perceived illegal action by Howell, a law enforcement officer.

In order to recover for violation of a First Amendment right under Section 1983, the plaintiff must show that the right allegedly violated was "clearly established." In his original motion to dismiss, (Doc. 15) Howell cites Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001), for the proposition that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." (internal quotes and citations omitted) Howell asserts that Lindsey's speech constitutes an unprotected "true threat" under Virginia v. Black, 538 U.S. 343 (2003), and that his prosecution for "Corruption by Threat Against Public Servant" violates no "clearly established" constitutional right.

Lindsey asserts that his statements are protected speech under Watts v. United States, 394 U.S. 705, 706 (1969), in which a draft protestor stated that "i[f] they ever make me carry a rifle the first man I want to get in my sights is L.B.J." The protestor's conviction for knowingly and willfully threatening the president was reversed because the threat was conditioned on an event "which the petitioner vowed would never occur, and

. . . both the petitioner and the crowd laughed after the statement was made." Watts 394 U.S. at 707.

Also, Lindsey cites United States v. Pinkston, 338 Fed.Appx. 801, 802 (11th Cir. 2009), for the proposition that "[t]he context in which the words were spoken should be taken into consideration." (Doc. 30) However, the "threat" at issue in Watts was implausible (if not uttered in jest), but Lindsey threatened Howell with sincerity and immediacy — and plausibility. By threat and intimidation, Lindsey calculated to deter Howell from policing the harbor. A threat that deters law enforcement is precisely the harm that the "Corruption by Threat Against Public Servant" designs to prevent. Unmistakably, Watts fails to "clearly establish" the "legality of announcing an intent to procure a weapon to defend against perceived illegal action by law enforcement." Watts fails to demonstrate that Howell violated a "clearly established" right.

Despite an opportunity to amend his complaint and a specific invitation to address the pertinent legal issue, Lindsey fails to plead sufficient facts (or cite controlling law) to show that his arrest and prosecution violated a "clearly established" right. The parties' memoranda convince a disinterested reader that the "legality of announcing an intent to procure a weapon to defend against perceived illegal action by law enforcement" is anything but "clearly established."

For the reasons stated both in this order and in the February 2, 2011, order (Doc. 17), Count I of the amended complaint is **DISMISSED**. Dismissal of Count I, Lindsey's Section 1983 claim and the sole remaining basis for federal jurisdiction, leaves only a state law claim. Supplemental jurisdiction over the state law claim is **DECLINED**.

See 28 U.S.C. § 1367(c)(3). Accordingly, this action is **DISMISSED** and the Clerk shall close the case.

ORDERED in Tampa, Florida, on May 16, 2011.

**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**