UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER LINDSEY,

      Plaintiff,

v.                                 CASE NO.: 8:10-cv-1910-T-23AEP

EDWARD HOWELL,

      Defendant.

_____/

## **ORDER**

Christopher Lindsey ("Lindsey") sued (Doc. 1) Edward Howell ("Howell") for violation of Lindsey's First and Fourth Amendment rights, for malicious prosecution, and for intentional infliction of emotional distress.  A February 2, 2011, order (Doc. 17) dismisses the Fourth Amendment claims and the emotional distress claim, and a May 16, 2011, order (Doc. 40) dismisses the First Amendment claim and declines jurisdiction over the malicious prosecution claim.  Howell moves (Doc. 41) for attorney fees and costs.[1]

## BACKGROUND[2]

Lindsey resided aboard a sailing vessel ("the vessel") on public water within the jurisdiction of the City of Sarasota, Florida.  In 2007, an ordinance was proposed that

---

[1] Lindsey concedes that Howell may recover costs pursuant to Federal Rules of Civil Procedure, Rule 54(d)(1).

[2] The facts are from the amended complaint (Doc. 26) and are assumed true.  Howell contests many of Lindsey's allegations.  See (Doc. 6, ¶¶ 23-34)

would transform an area where Lindsey regularly moored the vessel into a privately owned mooring field.  Lindsey "became known in the community as a vocal opponent of the [ordinance]."  (Doc. 26, ¶ 17)  On November, 5, 2007, Lindsey spoke against the ordinance at a meeting of the Sarasota County City Commission.  Howell, a Sarasota police officer in the Marine Patrol Unit, was at the meeting, and Lindsey and Howell "heated[ly]" debated the ordinance.  (Doc. 26, ¶ 29)

The following day, a friend of Lindsey's called Lindsey to report that Howell was circling and photographing the vessel.  In reaction, Lindsey telephoned the Coast Guard; during the conversation, Lindsey promised to "arm himself" in self-defense if Howell continued to investigate the vessel.  (Doc. 26, ¶ 37)  In addition, Lindsey contacted the Florida Fish and Wildlife Conservation Commission to object to the City of Sarasota's bothering the vessel, which Lindsey believed was legally moored.

On November 18, 2007, Lindsey objected to Howell's boarding an unoccupied boat near the vessel.  Howell "pulled aside of the [vessel] and, using expletives, demanded to know what Lindsey's 'problem' was."  (Doc. 26, ¶ 47)  After Howell and Lindsey discussed the propriety of Howell's boarding the other boat, Howell boarded Lindsey's vessel to inspect the marine sanitation device.  Lindsey objected to the boarding, and the complaint claims Howell had no valid reason for the inspection.  The complaint states also that Howell's hand was on a holstered gun during the inspection, that Howell "rummaged" through Lindsey's personal effects, and that Howell said if Lindsey again moored at the "South Lido Beach anchorage," the City of Sarasota would tow and crush the vessel.

After Howell left, Lindsey contacted the Sarasota County Sheriff's Office and stated:

> Do you have a marine unit I can speak with?  This is getting out of hand.  This is a serious issue.  The City Police are saying under a county ordinance they will tow and crush my boat . . . . I am going to arm myself and go back down there and make sure they don't do it . . . . I can't stress to you how serious this is.

(Doc. 26, ¶ 81)  The same day Lindsey informed a Sheriff's deputy "I will use a gun to defend my vessel if anyone comes aboard."  (Doc. 26, ¶ 82)  The following day, November 19, 2007, Lindsey left a message for the Sarasota Police Department, which states:

> I have a serious, serious problem with one of your officers . . . . I'm scared for my life and I am arming myself.  If he comes by my vessel and boards again, I am not going to put up with this . . . . [T]his is a serious situation and I am going to sue the City.  I need this taken care of before someone gets hurt.

(Doc. 26, ¶ 83)

By the time Lindsey called the Sarasota Police Department, Howell had completed a probable cause affidavit for Lindsey's arrest based on Lindsey's previous threats.  Howell obtained a warrant, and Lindsey was arrested on November 20, 2007.  A motion to dismiss the charge against Lindsey was denied, and Lindsey was tried and acquitted of corruption by threat against a public servant.

## DISCUSSION

An award of attorney fees to a prevailing defendant is proper if a civil rights plaintiff's "action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  Persaud v. Orange County School Bd., 255 Fed.Appx. 477, 478 (11th Cir. 2007) (per curiam) (quoting Hughes v. Rowe, 449 U.S. 5, 14 (1980)); see also Boler v. Space Gateway Support Co. LLC, 290 F.Supp.2d 1272,

1279-80 (M.D. Fla. 2003) (Antoon, J.).  Among other factors, whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the action was dismissed before trial inform whether a claim is frivolous.  Quintana v. Jenne, 414 F.3d 1306, 1309 (11th Cir. 2005).

Because the expectation of privacy in a maritime vessel is low, (Doc. 17 at 2-4), Howell boarded the vessel without violating the Fourth Amendment.  Lindsey argues that Howell's boarding was not authorized by Florida law, but "[a]n array of statutes and regulations imposes on the Sarasota Police Department (and others) a duty of enforcement in [Sarasota] harbor, and effective enforcement typically implies a warrantless and suspicionless search of a vessel on or adjoining the sea."  (Doc. 17 at 4); see State v. Casal, 410 So.2d 152, 155 (Fla. 1982).  Further, "linking Fourth Amendment protections to state law" would impermissibly "cause them to vary from place to place and time to time."[3]  Virginia v. Moore, 553 U.S. 164, 176 (2009) (quoting Whren v. United States, 517 U.S. 806, 815 (1996)); see also United States v. Street, 472 F.3d 1298, 1308 (11th Cir. 2006) ("violating a state statute is not tantamount to violating the federal Constitution"); Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002) ("an arrest supported by probable cause in circumstances where [the] arrest is

---

[3] Federal law allows the Coast Guard, on water over which the United States has jurisdiction, to "at any time go on board of any vessel subject to the jurisdiction, or the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel . . . ."  14 U.S.C. § 89(a).  "[Section 89(a)], which has been held constitutional, United States v. One (1) 43 Foot Sailing Vessel, 538 F.2d 694 (5th Cir. 1976) (per curiam), gives the Coast Guard plenary power to stop and board any American flag vessel anywhere on the high seas in complete absence of suspicion of criminal activity."  United States v. Williams, 617 F.2d 1063, 1075 (5th Cir. 1980) (en banc); see also United States v. Todhunter, 297 F.3d 886, 889 (9th Cir. 2002) ("Even without suspicion , . . a member of the United States Coast Guard[] ha[s] the right to board [a vessel] in navigable waters to ascertain that the vessel [i]s complying with all federal laws").

not permitted under state law [does not] violate[] the Fourth Amendment").  Lindsey's

(contested) allegation that Howell "rummaged" through personal belongings is

ambiguous and conclusory and demonstrates no unreasonableness in the inspection.

Lindsey intimates that Howell boarded the vessel in bad faith, but "[a]n action is

'reasonable' under the Fourth Amendment, regardless of the individual officer's state of

mind, as long as the circumstances, viewed *objectively*, justify the action."  Brigham

City, Utah v. Stuart, 547 U.S. 398, 404 (2006) (Roberts, C.J.) (emphasis in original)

(quotation omitted).  Further, qualified immunity protects Howell; Lindsey's burden was

to show Howell violated a clearly established constitutional right.  Cf. Malley v. Briggs,

475 U.S. 335, 341 (1986) ("[qualified immunity] provides ample protection to all but the

plainly incompetent or those who knowingly violate the law").

Lindsey's claim for intentional infliction of emotional distress is also weak.  An

intentional infliction of emotional distress claim requires exceptionally outrageous

behavior.  Edison v. Florida, 2007 WL 80831, *8 (M.D. Fla. 2007) (Steele, J.) (holding

that an allegation that the defendants attempted to unlawfully convict the plaintiff and

sought the death penalty was insufficient to state a claim for intentional infliction of

emotional distress).  As noted in the February 2, 2011, order, wrongfully causing an

individual to lose a job is not intentional infliction of emotional distress.  (Doc. 17 at 7)

(citing Artubel v. Colonial Bank Group, 2008 WL 3411785 (M.D. Fla. 2008)

(Merryday, J.)).  Even conduct sufficiently malicious or aggravating to justify punitive

damages for another tort is not necessarily adequate.  Artubel, 2008 WL 3411785 at *15

(citing Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278 (Fla. 1985)).  A claim

for intentional infliction of emotional distress requires behavior so outrageous that even

- 5 -

a flagrant violation of the Fourth Amendment and a wrongful prosecution actually as baseless as Lindsey claims would likely not suffice.

Lindsey argues that Howell sought Lindsey's arrest and prosecution as retaliation for Lindsey's public opposition to the ordinance; but if Howell had probable cause, a claim for retaliation fails.  See Woods v. Paradis, 380 F.Supp.2d 1316, 1330-31 (S.D. Fla. 2005).  Howell had abundant probable cause to seek Lindsey's arrest[4] because Lindsey threatened more than once to use a gun against law enforcement.

Lindsey argues that unlawful retaliation can occur even when probable cause is present.  Lindsey states, "[e]ven if an official's action would be 'unexceptional if taken on other grounds,' when retaliation against Constitutionally-protected speech is the but-for cause of that action, this retaliation is actionable and 'subject to recovery.'  Hartman v. Moore, 547 U.S. 250, 256 (2006)[.]"  (Doc. 30 at 2)  Yet the passage of Hartman on which Lindsey relies provides:

> Some official actions adverse to [a] speaker might well be unexceptionable if taken on other grounds, but when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, we have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution.

Hartman, 547 U.S. at 256.  Lindsey states that a retaliation claim requires only that retaliation is the "but for" cause of an arrest.  In contrast, the Hartman passage states that a retaliation claim requires both the presence of a retaliatory motive and the absence of a legitimate ground for the arrest.  See Hartman, 547 U.S. at 252 (holding

---

[4] The May 16, 2011, order declines supplemental jurisdiction over the malicious prosecution claim. However, that claim also requires an absence of probable cause.  Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1355 (Fla. 1994).  Because probable cause existed to initiate a prosecution of Lindsey for corruption by threat against a public servant, FLA. STAT. § 838.021, the malicious prosecution claim is meritless.

that a Bivens action against a prosecution retaliating for speech must claim an absence of probable cause).

Lindsey next argues that the threats are protected speech for which Howell could not lawfully seek Lindsey's arrest.  "Threats of violence," however, "are outside the First Amendment."  R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 388 (1992).  Lindsey claims that the statements, considered in context, are not "true" threats.  See United States v. Pinkston, 338 Fed. Appx. 801, 802 (11th Cir 2009) ("A true threat is a serious threat and not words uttered as mere political argument, idle talk, or jest").  Lindsey's suggestion amounts to "a conception of freedom of speech so rigid as to tolerate no concession to society's need for public order."  Terminiello v. City of Chicago, 337 U.S. 1, 14 (1949) (Jackson, J., dissenting).  Lindsey stated repeatedly and unambiguously that a law enforcement officer attempting to board the vessel – legally or otherwise – would meet the point of a gun.  See, e.g., (Doc. 26, ¶ 82)  Further, Lindsey sedulously conveyed that the threats were not "idle talk, or jest."  See, e.g., (Doc. 26, ¶ 81) ("This is a serious issue . . . . I can't stress to you how serious this is").

Finally, Lindsey argues that the threats were legal under the Second Amendment – Lindsey feared for his life and was only informing the police "that he had a right to bear arms to protect his person, home and property."  (Doc. 30 at 8-9)  Lindsey's claimed fear of death was baseless, and the claim that Lindsey promised only self-defense is incorrect.  Lindsey's guarantee of violence to anyone boarding the vessel was a threat to assault or murder a law enforcement officer.  Cf. Frohwerk v. United States, 249 U.S. 204, 206 (1919) (Holmes, J.) ("We venture to believe that neither Hamilton nor Madison, nor any other competent person then or later, ever

supposed that to make criminal the counseling of a murder . . . would be an unconstitutional interference with free speech").

In sum, far from establishing a prima facie case, Lindsey brought unfounded claims.

The other two factors support Howell also.  That a defendant offers no settlement suggests the action is meritless (not the only available suggestion but applicable here), see, e.g., Jerelds v. City of Orlando, 194 F.Supp.2d 1305, 1311 (M.D. Fla. 2002) (Presnell, J.), and Lindsey concedes that Howell never offered to settle.  Further, no trial or evidentiary hearing occurred because Lindsey failed to allege a plausible claim.

Each of Lindsey's claims is without merit, but "[t]he standard for a civil rights defendant to receive fees is high to encourage legitimate civil rights claims."  Quintana, 414 F.3d 1306, 1312 (quoting Ward v. Hickey, 996 F.2d 448, 455 (1st Cir. 1993)). Although a close question, attorney fees are unwarranted for the action as a whole. However, the thoroughly frivolous retaliation claim justifies an apportioned fee award. Lindsey owes Howell for the money devoted to defending against the retaliation claim. See Quintana, 414 F.3d at 1312 (requiring apportionment of attorney fees for a frivolous claim alleged with non-frivolous claims because "it would . . . undermine the intent of Congress to allow plaintiffs to prosecute frivolous claims without consequences merely because those claims were joined with unsuccessful claims that were not frivolous").

An award of attorney fees to Howell for the retaliation claim accords with settled precedent.  In short, asserting a conclusion of law unsupported or contradicted by facts leaves a civil rights plaintiff vulnerable to an attorney fees penalty, and a particularly frivolous claim virtually ensures an attorney fees penalty.  See, e.g., Persaud, 255

- 8 -

Fed.Appx. 477; <u>Head v. Medford</u>, 62 F.3d 351, 355-56 (11th Cir. 1995); <u>Beard v. Annis</u>, 730 F.2d 741, 744-45 (11th Cir. 1984); <u>Church of Scientology v. Cazares</u>, 638 F.2d 1272, 1290 (5th Cir. 1981).

<u>CONCLUSION</u>

Lindsey's retaliation claim is "so lacking in arguable merit as to be groundless." <u>Sullivan v. School Bd. of Pinellas County</u>, 773 F.2d 1182, 1189 (11th Cir. 1985).  The motion (Doc. 41) is **GRANTED** for Lindsey's retaliation claim and otherwise **DENIED**. Howell may submit an itemized and sworn claim for attorney fees as to the retaliation claim and for costs by **August 8, 2011**.

ORDERED in Tampa, Florida, on July 20, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE